## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JERMAINE WILLIAMS,
*on behalf of himself and all*
*others similarly situated*,

     Plaintiff,

v.                                Case No.:

WALMART, INC., *in its own name*
*and* d/b/a SAM'S CLUB,

     Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jermaine Williams, by and through his undersigned attorneys, and on behalf of himself and the putative classes set forth below, brings this Class Action Complaint against Walmart, Inc., ("Walmart") in its own name and d/b/a Sam's Club ("Sam's Club"), ("Defendant"), including, subsidiaries, divisions and affiliates, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. §§ 1681a–x.

## PRELIMINARY STATEMENT

1.     Defendant is a large, national retailer with locations throughout the United States operating under different trade names, including Walmart and Sam's Club.

2.     Defendant routinely obtains and uses information in consumer reports to conduct background checks on applicants and employees.

3.     The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose.  Such use becomes lawful if and only if the "user" – in this case Defendant – has complied with the FCRA's strict notice requirements. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

4.     Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

5.     Specifically, Defendant violated 15 U.S.C. § 1681b(b)(3)(A)(i) by denying employment opportunities to Plaintiff based in part or in whole on the results of Plaintiff's consumer report without first providing him notice and a copy of the report, as well as a reasonable opportunity to dispute or discuss the contents of the report.

6.     Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports.  The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an

employment decision.  Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively discuss negative information with the potential employers.

7.     In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

> **All consumers in the United States who (1) were subject to a consumer report provided to Walmart or Sam's Club, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into Walmart or Sam's Club computer system a code indicating that person was ineligible for hire or continued employment, and (4) for whom Walmart or Sam's Club did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before the code was entered in Walmart or Sam's Club's system, (5) for the five years preceding the date of this action.**

8.     Plaintiff also asserts Count I on behalf of the following "Temporary Worker Sub-Class," consisting of:

> **All members of the Adverse Action class who Walmart or Sam's Club classified as temporary employees.**

9.     On behalf of himself and the putative class, Plaintiff seeks statutory damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## PARTIES

10.     Plaintiff is a consumer who was employed by Defendant and subsequently terminated in whole or in part because of his consumer report.

11.     Plaintiff is a member of the putative Adverse Action Class and Temp Worker Sub-Class.

12.     Defendant Walmart, Inc. in its own name and d/b/a Sam's Club, is a limited liability company and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

14.     Venue is proper in the Middle District of Florida because Plaintiff is a resident of Hillsborough County, Florida and the events given rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

### *Defendant's Use of Background Checks*

15.     Defendant's uniform, national practice is to conduct background checks on most of their job applicants and employees, regardless of position.

16.     Defendant does not perform these background checks in-house. Rather, Defendant relies on an outside consumer reporting agency ("CRA") to obtain this information and report it to the Defendant.  These reports constitute "consumer reports" for purposes of the FCRA.

17.     Defendant also provides to the CRA hiring criteria that Defendant expects the CRA to apply to the results of its background checks.  The CRA

completes a background-check report, then compares the report with Defendant's hiring criteria and assigns a grade or score to the report.

18.    This process is commonly known as "adjudication" of reports by the CRA.

19.    Based on the adjudication results, the CRA applies grades of "eligible" or "ineligible" (or similar terms such as "clear" or "requires review", respectively).  Defendant adopts the CRA's adjudication grades wholesale and as their own, without meaningful review of those results.

20.    Once the adjudication results are presented to Walmart electronically, Walmart views them and enters a code or designation in its computer system that the person is ineligible for hire (if an applicant) or cannot continue employment (if already hired pending a background check).

21.    At that point, Defendant considers the individual to not be hirable or no longer an employee.

### *Plaintiff's Experience*

22.    On August 31, 2020, Plaintiff working through a temporary agency, began working at Sam's Club located at 5131 S. Dale Mabry Highway, Tampa, Florida 33611, on a temporary basis.

23.    By December, 2020, Plaintiff had worked sufficient hours to apply for hire directly with Defendant.  Plaintiff, while a temporary employee, submitted an

application for full time employment with Defendant.

24.    As part of the hiring process, Sam's Club procured Plaintiff's consumer report from First Advantage, a CRA.

25.    Discovery will show that First Advantage adjudicated Plaintiff as ineligible for continued employment with Walmart, causing Walmart to enter into its computer system a code or designation confirming Plaintiff's ineligibility.

26.    After obtaining Plaintiff's consumer report, Defendant denied Plaintiff employment and terminated his temporary assignment.  Defendant's actions were based in whole or in part on Plaintiff's consumer report.

27.    Sam's Club did not provide Plaintiff with a copy of his background check before terminating his temporary assignment and rejecting his application for employment.

28.    Sam's Club's failure to provide Plaintiff with pre-adverse action notice, including a copy of his consumer report and written summary of his FCRA rights at least five business days before coding him as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

### *Plaintiff's Concrete Harm*

29.    Defendant's failure to provide pre-adverse action notice injured Plaintiff in that he was deprived of information due to him at a particular time, and

the ability to contest or discuss with Defendant the content of his consumer report.

30.     These rights attach even if the reports were accurate, as courts regularly recognize that Section 1681b(b)(3) entitles consumers to know the same information the employer is using to make its hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the employer before the hiring decision is made.

31.     Defendant denied Plaintiff employment based in whole or in part on the content of his consumer report but did not first provide him with pre-adverse action notice, including a copy of his consumer report.  Therefore, Defendant failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i).  This resulted in an informational injury to Plaintiff and class members.

32.     Because Defendant failed to provide Plaintiff a copy of his consumer report, Plaintiff was further deprived of the opportunity to see how his personal, sensitive information was being reported by a consumer reporting agency.

33.     Because Defendant failed to provide Plaintiff with a copy of his consumer report, Plaintiff was deprived of the opportunity to proactively address how his background was being interpreted by Defendant and to discuss the information and place it in context.

34.     After his termination, Plaintiff worried whether the information contained in his consumer report was accurate and how it would affect his

prospects of employment elsewhere.

35.    Plaintiff spent time researching his rights to obtain the information contained in his consumer report.

36.    Plaintiff spent time obtaining his consumer report from First Advantage.   In fact, it took Plaintiff several attempts over a three-month period before he finally obtained a copy from First Advantage.   This despite the fact that Defendant is required by the FCRA to provide consumers with copies of their reports before taking adverse actions against them. 15 U.S.C. § 1681b(b)(3).

37.    The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural.   The violation alleged here is not just a technical requirement – Defendant had no right to take an adverse employment action against Plaintiff without first providing him notice of its intent, and copies of Plaintiff's report.

38.    Plaintiff and the putative class members, all of whom were denied pre-adverse action notice, therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

39.    Plaintiff and Class Members suffered additional concrete harm because of the adjudication of their reports.   In taking such adverse actions against applicants before providing them with the notice and summary of rights demanded

by Section 1681b(b)(3), Defendant deprived Plaintiff and class members with information to which they were statutorily entitled at a particular time. This deprivation worked concrete harm on Plaintiff and members of the classes.

40.    Courts regularly recognize that violations of Section 1681b(b)(3) work concrete harm on consumers. *See*, e.g., *Helwig v. Concentrix Corp.*, No. 1:20-cv-920, 2021 WL 1165719, at *3 (N.D. Ohio Mar. 26, 2021) (concluding that deprivation of notice before adverse action resulted in Article III harm, and citing cases from the Third, Sixth, Seventh, and D.C. Circuits so holding).

41.    This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Defendant) could obtain and use a consumer's personal information consumer report.

42.    In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

43.    Plaintiff and each putative class member has been substantively harmed and injured by Defendant in the deprivation of the congressionally mandated information.

44.    As one court explained, at least two concrete injuries result from the

failure to provide Section 1681b(b)(3) notice:

> Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information. Specifically, Congress provided consumers against whom current or prospective employers are contemplating adverse employment action with the right to receive a copy of the report on which the adverse action is based and a summary of their rights under the FCRA before the contemplated adverse employment action is taken. Relatedly, this subsection provides consumers against whom adverse employment action is contemplated with a right to have time to discuss the reports with their current or prospective employers and to correct the reports if necessary before the contemplated adverse action is taken.

> Thus, Thomas, for himself and the Adverse Action Sub–Class, has alleged two concrete injuries. First, by alleging that Defendants took adverse employment action without providing the information guaranteed by the statute, Thomas, on behalf of the Adverse Action Sub–Class, has alleged an informational injury. Every sub-class member had a statutory right to receive a copy of his or her consumer report and an FCRA summary of rights prior to Defendants' adverse action. No sub-class member received the required information. Therefore, Thomas, like every sub-class member, was deprived of information required by law to be disclosed, which constitutes a concrete injury sufficient to confer standing.

> Moreover, Thomas and other sub-class members have also suffered a second concrete injury: they were deprived of the opportunity to "be confronted with the charges against [them] and tell [their] side of the story." Senate Report at 3. Even if all of the subclass members' consumer reports were entirely correct (an unlikely scenario, given the errors that commonly pepper consumer reports despite the FCRA's protections), the sub-class members were deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports with Defendants before suffering adverse employment action.

*Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 637–38 (E.D. Va. 2016). The

*Thomas* court is by no means alone in this regard. *See Helwig*, 2021 WL 1165719,

at *3.

45.    Courts are also aligned in the conclusion that concrete harm results from the deprivation of notice even if the background report is accurate. *Hood v. Action Logistix, LLC*, No. 4:20-cv-978 RWS, 2021 WL 1143885, at *4 (E.D. Mo. Mar. 25, 2021) (concluding that "[a]n unsuccessful job applicant suffers a concrete harm when he is deprived of these [Section 1681b(b)(3)] rights—even if the information in the report is true and accurate," and collecting cases holding likewise).

46.    That is because context is important, and being denied the ability to see the report on which an employer is basing a negative hiring decision prevents consumers from being able to explain any negative information. *See id.* at *5 ("[T]he language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm.").

### *Defendant Acted Willfully*

47.    Defendant knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

48.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

49.    Defendant has long been aware of litigation against employers involving the FCRA's provisions governing the use of reports in the employment

context. *See, e.g.*, *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238 (E.D. Va.).  Walmart itself was a party in *Beverly*, wherein its background check vendor committed to a specific schedule for the provision of the notices challenged here.

50.   More recently, Walmart faced allegations like those here in *Stephens v. Walmart* Stores*, Inc.*, No. 0:16-cv-62723-KMM (M.D. Fla.), but managed to escape liability based on a technicality not present here.

51.   Defendant has likewise long been aware of litigation its background-check vendors faced regarding adjudication of reports and the provision of notice under the FCRA's employment-purpose subsections. *Manuel*, No. 3:14-cv-238; *Henderson v. Acxiom Risk Mitigation, Inc.*, No. 3:12-cv-00589 (E.D. Va.); *Smith v. ChoicePoint*, No. 3:07-cv-541 (E.D. Va.); *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 3:06-cv-241 (E.D. Va.).

52.   To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S. C. § 1681b(b)(1)(A).

53.   Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the

FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

54.    Despite its certifications, Defendant knowingly violated 15 U.S.C. §§ 1681b(b)(2) and b(b)(3).

55.    Defendant obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

56.    These requirements have been part of the fabric of the FCRA since Congress enacted it.  Defendant has had decades by which to become compliant with these requirements, yet it has not done so.

57.    Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

58.    As a result of these FCRA violations, Defendant is liable to Plaintiff and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

59.    Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b, Plaintiff bring this action for himself and on behalf of the putative class and

subclass defined below.

60.    In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. §

1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

> **All consumers in the United States who (1) were subject to a consumer report provided to Walmart or Sam's Club, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into Walmart or Sam's Club computer system a code indicating that person was ineligible for hire or continued employment, and (4) for whom Walmart or Sam's Club did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before the code was entered in Walmart or Sam's Club's system, (5) for the five years preceding the date of this action.**

61.    Plaintiff also asserts Count I on behalf of the following "Temporary

Worker Sub-Class," consisting of:

> **All members of the Adverse Action class who Walmart or Sam's Club classified as temporary employees.**

62.    <u>Numerosity</u>: The members of the putative classes are so numerous

that joinder of all Class members is impracticable. Defendant regularly obtains

and uses information in consumer reports to conduct background checks on

prospective employees and existing employees, and frequently relies on such

information, in whole or in part, in the hiring process.  Plaintiff is informed and

believes that during the relevant time period, hundreds of Defendant's employees

and prospective employees satisfy the definition of the putative classes. Based on

the number of putative class members, joinder is impracticable.  The names and addresses of the Class members are identifiable through Defendant's records and published Class members may be notified of this action by mailed notice.

63.    Typicality: Plaintiff's claims are typical of those of the members of the putative classes. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other putative class members, and Defendant treated Plaintiff consistent with other putative class members in accordance with their standard policies and practices.

64.    Adequacy: Plaintiff will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

65.    Commonality: Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative class.  These common questions include, but are not limited to:

   a.  whether Defendant uses consumer report information to conduct background checks on consumers;

   b.  whether Defendant provided consumers with notice and copies of their consumer reports before taking an adverse employment action against them;

   c.  whether Defendant's violation of the FCRA was willful;

16

        d.  the proper measure of statutory damages; and

        e.  the proper form of injunctive and declaratory relief.

66.    This case is maintainable as a class action because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant.  Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

67.    This case is also maintainable as a class action because Defendant acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

68.    Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an

interest in pursuing separate actions against the Defendant, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

69.   Plaintiff intends to send notice to all members of the Putative Classes to the extent required by the Federal Rules of Civil Procedure. The names and addresses of the Putative Class members are readily available from Defendant's records.

## COUNT I
### Failure to Provide Pre-Adverse Action Notice in Violation of FCRA
### 15 U.S.C. § 1681b(b)(3)(A)(i)

70.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 16-29.

71.   Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class and Temporary Worker Sub-Class.

72.   Defendant violated the FCRA by failing to provide Plaintiff and other

Class members with pre-adverse action notice, and a copy of the consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A)(i)(A).

73.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(3)(A)(i)(A). Defendant knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

74.    Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A)(i)(A) a plethora of FTC opinions and case law existed.

75.    Plaintiff and the Classes are entitled to statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

76.    Plaintiff and the Classes are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative classes, pray for relief as follows:

a.    determining that this action may proceed as a class action;

b.    designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative classes;

c.    issuing proper notice to the putative classes at Defendant's expense;

d.    awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative classes; and

e.    awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

Dated this 18th day of June, 2021.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Florida Bar No.: 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813.577.4722
Facsimile: 813.257.0572
medelman@forthepeople.com

*and*

**CRAIG C. MARCHIANDO, ESQ.**
**CONSUMER LITIGATION**
**ASSOCIATES, P.C.**

763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
craig@clalegal.com

*Attorneys for Plaintiff*