**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JERMAINE WILLIAMS, KELCCI
SHELTON, and CHRISTINE
CALLAHAN, *on behalf of themselves
and all others similarly situated*,

     Plaintiffs,

v.                        Case No.: 8:21-cv-01480-SDM-TGW

WALMART, INC., *in its own name
and* d/b/a SAM'S CLUB,

     Defendant.
_____/

**AMENDED CLASS ACTION
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Jermaine Williams, Kelcci Shelton, and Christine Callahan, by and through their undersigned attorneys, and on behalf of themselves and the putative classes set forth below, bring this Amended Class Action Complaint against Walmart, Inc., ("Walmart") in its own name and d/b/a Sam's Club ("Sam's Club"), ("Defendant"), including, subsidiaries, divisions and affiliates, under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. §§ 1681a–x.

**PRELIMINARY STATEMENT**

1.     Defendant is a large, national retailer with locations throughout the United States operating under different trade names, including Walmart and Sam's Club.

2.      Defendant routinely obtains and uses information in consumer reports to conduct background checks on applicants and employees.

3.      The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a consumer report for an employment purpose. Such use becomes lawful if and only if the "user" – in this case Defendant – has complied with the FCRA's strict notice requirements. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

4.      Defendant willfully violated these requirements in multiple ways, in systematic violation of Plaintiffs' rights and the rights of other putative class members.

5.      Specifically, Defendant violated 15 U.S.C. § 1681b(b)(3)(A)(i) by denying employment opportunities to Plaintiffs based in part or in whole on the results of Plaintiffs' consumer reports without first providing them notice and a copy of the reports, as well as a reasonable opportunity to dispute or discuss the contents of the reports.

6.      Providing a copy of the background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading consumer reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even if reports are accurate, the FCRA demands that applicants receive them and their written FCRA rights so that they may preemptively

2

discuss negative information with the potential employers.

7.    In   Count   I,   Plaintiffs   assert   a   FCRA   claim   under   15   U.S.C.   §
1681b(b)(3)(A)(i)  on  behalf  of  an  "Adverse  Action  Class"  consisting  of:

> **All  consumers  in  the  United  States  who  (1)  were  subject  to  a
> consumer  report  provided  to  Walmart  or  Sam's  Club,  (2)  for  whom,
> based  in  whole  or  in  part  on  the  information  contained  in  those
> consumer  reports,  (3)  there  was  entered  into  Walmart  or  Sam's  Club
> computer  system  a  code  with  which  a  person  was  ineligible  for  hire
> or  continued  employment,  and  (4)  for  whom  Walmart  or  Sam's  Club
> did  not  provide  the  consumer  with  a  copy  of  the  consumer  report  and
> written  summary  of  FCRA  rights  at  least  five  business  days  before
> the  code  was  entered  in  Walmart  or  Sam's  Club's  system,  (5)  for  the
> five  years  preceding  the  date  of  this  action.**

8.    Plaintiffs  also  assert  Count  I  on  behalf  of  the  following  "Temporary
Worker  Sub-Class,"  consisting  of:

> **All  members  of  the  Adverse  Action  class  who  Walmart  or  Sam's
> Club  classified  as  temporary  employees.**

9.    On  behalf  of  themselves  and  the  putative  classes,  Plaintiffs  seek
statutory  damages,  costs  and  attorneys'  fees,  and  other  appropriate  relief  under  the
FCRA.

## PARTIES

10.    Plaintiffs  are  consumers  who  were  employed  by  Defendant  and
subsequently  terminated  in  whole  or  in  part  because  of  their  consumer  report.

11.    Plaintiffs  are  members  of  the  putative  Adverse  Action  Class  and
Temporary  Worker  Sub-Class.

12.    Defendant  Walmart,  Inc.  in  its  own  name  and  d/b/a  Sam's  Club,  is  a

limited liability company and user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

13.    The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p.

14.    Venue is proper in the Middle District of Florida because Plaintiff Williams is a resident of Hillsborough County, Florida, Walmart does business in Hillsborough County, and the events given rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### *Defendant's Use of Background Checks*

15.    Defendant's uniform, national practice is to conduct background checks on most of their job applicants and employees, regardless of position.

16.    Defendant does not perform these background checks in-house. Rather, Defendant relies on an outside consumer reporting agency ("CRA") to obtain this information and report it to the Defendant.  These reports constitute "consumer reports" for purposes of the FCRA.

17.    Defendant also provides to the CRA hiring criteria that Defendant expects the CRA to apply to the results of its background checks.  The CRA completes a background-check report, then compares the report with Defendant's hiring criteria and assigns a grade or score to the report.

18.    This process is commonly known as "adjudication" of reports by the CRA.

19.     Based on the adjudication results, the CRA applies grades of "eligible" or "ineligible" (or similar terms such as "clear" or "requires review," respectively). Defendant adopts the CRA's adjudication grades wholesale and as their own, without meaningful review of those results.

20.     Once the adjudication results are presented to Defendant electronically, Defendant views them and enters a code or designation in its computer system with which a person is ineligible for hire (if an applicant) or cannot continue employment (if already hired pending a background check).

21.     At that point, Defendant considers the individual to not be hirable or no longer an employee.

### *Plaintiff Williams's Experience*

22.     On August 31, 2020, Plaintiff Williams, working through a temporary agency, began working at Sam's Club located at 5131 S. Dale Mabry Highway, Tampa, Florida 33611, on a temporary basis.

23.     By December, 2020, Plaintiff Williams had worked sufficient hours to apply for hire directly with Defendant.  Plaintiff Williams, while a temporary employee, submitted an application for full time employment with Defendant.

24.     As part of the hiring process, Sam's Club procured Plaintiff Williams's consumer report from First Advantage, a CRA.

25.     Discovery will show that First Advantage adjudicated Plaintiff Williams as ineligible for continued employment with Defendant, causing Defendant to enter into its computer system a code or designation confirming Plaintiff

Williams's ineligibility.

26.     After obtaining Plaintiff Williams's consumer report, Defendant denied him employment and terminated his temporary assignment.   Defendant's actions were based in whole or in part on Plaintiff Williams's consumer report.

27.     Sam's Club did not provide Plaintiff Williams with a copy of his background check before terminating his temporary assignment and rejecting his application for employment.

28.     Sam's Club's failure to provide Plaintiff Williams with pre-adverse action notice, including a copy of his consumer report and written summary of his FCRA rights at least five business days before coding him as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

### *Plaintiff Shelton's Experience*

29.     On or around March 21, 2021, Plaintiff Shelton was hired by Defendant to work at its distribution center in Fitzgerald, Georgia.   Plaintiff Shelton commenced her employment shortly thereafter, working regularly scheduled shifts as any other Walmart employee.

30.     Plaintiff Shelton was not hired as a temporary employee or through a staffing agency.

31.     On April 7, 2021, First Advantage adjudicated/scored Plaintiff Shelton's consumer report "Review – Yes**" and "Score – No Self Report and Conviction Found**."   The two asterisks next to the adjudication meant "Further

6

review is required by the client to determine the consumer's eligibility based on the background check results.   Please refer to the corresponding detailed component report section for additional information."

32.   The consumer report also contained a notation that a "revised report" was anticipated for April 12, 2021.

33.   Discovery will show "Review – Yes**" and "Score – No Self Report and Conviction Found**" is an adjudication/score which, unless otherwise changed, renders a consumer ineligible for hire or continued employment.

34.   Discovery will show that on or about April 12, 2021, First Advantage communicated to Walmart an adjudication making Plaintiff Shelton ineligible for continued employment with Walmart, causing Walmart to enter into its computer system a code or designation confirming Plaintiff Shelton's ineligibility.

35.   The adjudications "Review – Yes**" and "Score – No Self Report and Conviction Found**" rendered Plaintiff Shelton ineligible for continued employment for as long as such adjudications were affixed to Plaintiff's consumer report.

36.   Discovery will show that on or about April 12, 2021, Walmart adopted the adjudication as its own.   The adoption of the adjudication was an adverse employment action.

37.   Plaintiff Shelton was terminated on April 12, 2021 in whole or in part because of her consumer report.

38.   Walmart terminated Plaintiff Shelton employment because of the adjudication on her consumer report.   If Plaintiff Shelton had been adjudicated

"eligible" or Walmart had entered a different designation in its computer system with which Plaintiff Shelton could have commenced employment, Walmart would not have terminated Plaintiff Shelton's employment.

39.     Walmart's purported reason for termination, "end of temporary assignment" was pretext for terminating Plaintiff Shelton in whole or in part because of her consumer report.

40.     Walmart did not provide Plaintiff Shelton with a copy of her background check before terminating her employment.

41.     Walmart's failure to provide Plaintiff Shelton with pre-adverse action notice, including a copy of her consumer report and written summary of her FCRA rights at least five business days before coding her as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

### *Plaintiff Callahan's Experience*

42.     In October, 2020, Plaintiff Callahan applied for employment as a maintenance associate with Walmart in Jacksonville, Florida.

43.     On or around October 24, 2020, Walmart conditionally offered Plaintiff Callahan employment conditioned upon passing a criminal background check.

44.     On or about October 24, 2020, Walmart ordered Plaintiff Callahan's consumer report from First Advantage.

45.     On or about October 24, 2020, First Advantage adjudicated Plaintiff Callahan's consumer report "Review – Yes** Score – Self Reported Conviction**." The two asterisks next to the adjudication indicated "Further review is required by

the client to determine the consumer's eligibility based on the background check results.  Please refer to the corresponding detailed component report section for additional information."

46.    The Score Result affixed to Plaintiff Callahan's consumer report was "Deferred With Review."  Discovery will show that on or about October 24, 2020, First Advantage communicated to Walmart the adjudication, which made Plaintiff Callahan ineligible to commence employment, causing Walmart to enter into its computer system a code or designation confirming Plaintiff Callahan's ineligibility.

47.    Discovery will show Plaintiff Callahan was not eligible for employment with Walmart as long as her Score Result remained "Deferred With Review."

48.    Walmart adopted the Score Result "Deferred with Review" as its own, which prevented Plaintiff Callahan from commencing her employment.  The adoption of the adjudication was an adverse employment action.

49.    On or around November 5, 2020, Walmart informed Plaintiff Callahan "Unfortunately, at this time we have decided not to move forward as we have other candidates who are more qualified for the position."  However, Walmart had previously offered Plaintiff Callahan the job, so she was clearly qualified for the position.

50.    Walmart's purported reason for denying Plaintiff Callahan was pretext for an adverse employment action based in whole or in part on her consumer report. The reason other candidates were "more qualified" was because their consumer reports were adjudicated and assigned a score which allowed them to immediately

9

commence employment without further review.

51.    Walmart did not hire Plaintiff Callahan because of the adjudication on her consumer report.  If Plaintiff Callahan had been adjudicated "eligible" or Walmart had entered a different designation in its computer system with which Plaintiff Callahan could have commenced employment, Walmart would not have denied Plaintiff Callahan employment.

52.    Walmart denied Plaintiff Callahan employment in whole or in part because of her consumer report.  Walmart did not provide Plaintiff Callahan with a copy of her background check before taking an adverse employment action against her, *i.e.* deeming another applicant "more qualified."

53.    Walmart did not provide Plaintiff Callahan with a copy of her background check before taking an adverse employment action against her, *i.e.* denying her employment.

54.    Walmart's failure to provide Plaintiff Callahan with pre-adverse action notice, including a copy of her consumer report and written summary of her FCRA rights at least five business days before deeming Plaintiff "less qualified" than the applicant it hired for the position it had offered to Plaintiff was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

55.    Walmart's failure to provide Plaintiff Callahan with pre-adverse action notice, including a copy of her consumer report and written summary of her FCRA rights at least five business days before coding her as ineligible in its computer system was a blatant violation of the requirements set forth by 15 U.S.C. § 1681b(b)(3).

*Plaintiffs' Concrete Harm*

56.     Defendant's failure to provide pre-adverse action notice injured Plaintiffs in that they were deprived of information due to them at a particular time, and the ability to contest or discuss with Defendant the content of their consumer reports.

57.     These rights attach even if the reports were accurate, as courts regularly recognize that § 1681b(b)(3) entitles consumers to know the same information the employer is using to make its hiring decision and, even if the report contains no inaccuracies, to soften the brunt of negative information by discussing it preemptively with the employer before the hiring decision is made.

58.     Defendant denied and/or terminated Plaintiffs' employment based in whole or in part on the content of their consumer reports but did not first provide them with pre-adverse action notice, including a copy of their consumer reports. Therefore, Defendant failed to satisfy the federally imposed requirements of § 1681b(b)(3)(A)(i).   This resulted in an informational injury to Plaintiffs and class members.

59.     Because Defendant failed to provide Plaintiffs a copy of their consumer reports, Plaintiffs were further deprived of the opportunity to see how their personal, sensitive information was being reported by a consumer reporting agency.

60.     Because Defendant failed to provide Plaintiffs with a copy of their consumer reports, Plaintiffs were deprived of the opportunity to proactively address how their background was being interpreted by Defendant and to discuss the

11

information and place it in context.

61.   After their termination, Plaintiffs worried whether the information contained in their consumer reports were accurate and how it would affect their prospects of employment elsewhere.

62.   Plaintiffs spent time researching their rights to obtain the information contained in their consumer reports.

63.   Plaintiffs spent time obtaining their consumer reports from First Advantage.   In fact, it took Plaintiff Williams several attempts over a three-month period before he finally obtained a copy from First Advantage.   This despite the fact that Defendant is required by the FCRA to provide consumers with copies of their reports before taking adverse actions against them. 15 U.S.C. § 1681b(b)(3).

64.   The FCRA's protections regarding who may obtain consumer reports and how they may be used are real and substantive, not merely procedural.   The violation alleged here is not just a technical requirement – Defendant had no right to take an adverse employment action against Plaintiffs without first providing them notice of its intent, and copies of Plaintiffs' reports.

65.   Plaintiffs and the putative class members, all of whom were denied pre-adverse action notice, therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

66.   Plaintiffs and Class Members suffered additional concrete harm because of the adjudication of their reports.   In taking such adverse actions against applicants

12

before providing them with the notice and summary of rights demanded by § 1681b(b)(3), Defendant deprived Plaintiffs and class members with information to which they were statutorily entitled at a particular time. This deprivation worked concrete harm on Plaintiffs and members of the classes.

67. Courts regularly recognize that violations of § 1681b(b)(3) work concrete harm on consumers. *See*, e.g., *Helwig v. Concentrix Corp.*, No. 1:20-cv-920, 2021 WL 1165719, at *3 (N.D. Ohio Mar. 26, 2021) (concluding that deprivation of notice before adverse action resulted in Article III harm, and citing cases from the Third, Sixth, Seventh, and D.C. Circuits so holding).

68. This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Defendant) could obtain and use a consumer's personal information found on a consumer report.

69. In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiffs and consumers like them with respect to employer use of a consumer report for an employment adverse action.

70. Plaintiffs and each putative class member have been substantively harmed and injured by Defendant in the deprivation of the congressionally mandated information.

71. As one court explained, at least two concrete injuries result from the failure to provide § 1681b(b)(3) notice:

13

Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information. Specifically, Congress provided consumers against whom current or prospective employers are contemplating adverse employment action with the right to receive a copy of the report on which the adverse action is based and a summary of their rights under the FCRA before the contemplated adverse employment action is taken. Relatedly, this subsection provides consumers against whom adverse employment action is contemplated with a right to have time to discuss the reports with their current or prospective employers and to correct the reports if necessary before the contemplated adverse action is taken.

Thus, Thomas, for himself and the Adverse Action Sub–Class, has alleged two concrete injuries. First, by alleging that Defendants took adverse employment action without providing the information guaranteed by the statute, Thomas, on behalf of the Adverse Action Sub–Class, has alleged an informational injury. Every sub-class member had a statutory right to receive a copy of his or her consumer report and an FCRA summary of rights prior to Defendants' adverse action. No sub-class member received the required information. Therefore, Thomas, like every sub-class member, was deprived of information required by law to be disclosed, which constitutes a concrete injury sufficient to confer standing.

Moreover, Thomas and other sub-class members have also suffered a second concrete injury: they were deprived of the opportunity to "be confronted with the charges against [them] and tell [their] side of the story." Senate Report at 3. Even if all of the subclass members' consumer reports were entirely correct (an unlikely scenario, given the errors that commonly pepper consumer reports despite the FCRA's protections), the sub-class members were deprived of the opportunity to explain any negative records in their consumer reports and discuss the issues raised in their reports with Defendants before suffering adverse employment action.

*Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 637–38 (E.D. Va. 2016). The *Thomas*

court is by no means alone in this regard. *See Helwig*, 2021 WL 1165719, at *3.

14

72.     Courts are also aligned in the conclusion that concrete harm results from the deprivation of notice even if the background report is accurate. *Hood v. Action Logistix, LLC*, No. 4:20-cv-978 RWS, 2021 WL 1143885, at *4 (E.D. Mo. Mar. 25, 2021) (concluding that "[a]n unsuccessful job applicant suffers a concrete harm when he is deprived of these [Section 1681b(b)(3)] rights—even if the information in the report is true and accurate," and collecting cases holding likewise).

73.     That is because context is important, and being denied the ability to see the report on which an employer is basing a negative hiring decision prevents consumers from being able to explain any negative information. *See id.* at *5 ("[T]he language of § 1681b(b)(3)(A) as well as the legislative history of the FCRA reflects clear congressional intent to make an individual's inability to review and respond to the contents of his consumer report before suffering an adverse employment action a redressable harm.").

### *Defendant Acted Willfully*

74.     Defendant knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

75.     Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears

reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

76.     Defendant has long been aware of litigation against employers involving the FCRA's provisions governing the use of reports in the employment context. *See, e.g., Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14-cv-238 (E.D. Va.). Walmart itself was a party in *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va.), wherein its background check vendor committed to a specific schedule for the provision of the notices challenged here.

77.     Walmart has therefore been acutely aware of the requirements of § 1681b(b)(3) for more than a decade.

16

78.     More recently, Walmart faced allegations like those here in *Stephens v. Walmart* Stores*, Inc.*, No. 0:16-cv-62723-KMM (M.D. Fla.), but managed to escape liability based on a technicality not present here.

79.     Defendant has likewise long been aware of litigation its background-check vendors faced regarding adjudication of reports and the provision of notice under the FCRA's employment-purpose subsections. *Manuel*, No. 3:14-cv-238; *Henderson v. Acxiom Risk Mitigation, Inc.*, No. 3:12-cv-00589 (E.D. Va.); *Smith v. ChoicePoint*, No. 3:07-cv-541 (E.D. Va.); *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 3:06-cv-241 (E.D. Va.).

80.     To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

81.     Upon information and belief, Defendant knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

82.     Despite its certifications, Defendant knowingly violated 15 U.S.C. §§ 1681b(b)(2) and b(b)(3).

83.     Defendant obtained, or had available, substantial written materials,

which apprised it of its duties under the FCRA.

84.     These requirements have been part of the fabric of the FCRA since Congress enacted it.  Defendant has had decades by which to become compliant with these requirements, yet it has not done so.

85.     Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiffs and putative class members of their rights under the FCRA.

86.     As a result of these FCRA violations, Defendant is liable to Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

87.     Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b, Plaintiffs bring this action for themselves and on behalf of the putative class and subclass defined below.

88.     In Count I, Plaintiffs assert a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

**All consumers in the United States who (1) were subject to a consumer report provided to Walmart or Sam's Club, (2) for whom, based in whole or in part on the information contained in those consumer reports, (3) there was entered into Walmart or Sam's Club computer system a code with which a person was ineligible for hire or continued employment, and (4) for whom Walmart or Sam's Club**

18

**did not provide the consumer with a copy of the consumer report and written summary of FCRA rights at least five business days before the code was entered in Walmart or Sam's Club's system, (5) for the five years preceding the date of this action.**

89.     Plaintiffs also assert Count I on behalf of the following "Temporary Worker Sub-Class," consisting of:

**All members of the Adverse Action class who Walmart or Sam's Club classified as temporary employees.**

90.     Numerosity: The members of the putative classes are so numerous and geographically dispersed that joinder of all Class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, in the hiring process. Plaintiffs are informed and believe that during the relevant time period, hundreds of Defendant's employees and prospective employees satisfy the definition of the putative classes.   Based on the number of putative class members, joinder is impracticable.   The names and addresses of the Class members are identifiable through Defendant's records and published Class members may be notified of this action by mailed notice.

91.     Typicality: Plaintiffs' claims are typical of those of the members of the putative classes.   Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiffs are typical of those suffered by other putative class members, and Defendant treated Plaintiffs consistent with other putative class

members in accordance with their standard policies and practices.

92.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

93.     Commonality: Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

   a.  whether Defendant uses consumer report information to conduct background checks on consumers;

   b.  whether Defendant provided consumers with notice and copies of their consumer reports before taking an adverse employment action against them;

   c.  whether Defendant's violation of the FCRA was willful;

   d.  the proper measure of statutory damages; and

   e.  the proper form of injunctive and declaratory relief.

94.     This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for the Defendant. Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

20

95.     This case is also maintainable as a class action because Defendant acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

96.     Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendant's conduct, which is described in this Amended Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA.   Members of the putative classes do not have an interest in pursuing separate actions against the Defendant, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.   Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.   Moreover, management of this action as a class action will not present any foreseeable difficulties.   In the interests of justice and judicial efficiency, it would be desirable to  concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

97.     Plaintiffs intend to send notice to all members of the putative classes to the extent required by the Federal Rules of Civil Procedure.   The names and addresses of the putative class members are readily available from Defendant's

records.

## CLAIM FOR RELIEF

### COUNT I
**Failure to Provide Pre-Adverse Action Notice in Violation of the FCRA**
**15 U.S.C. § 1681b(b)(3)(A)(i)**

98.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs 15-86.

99.    Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiffs and other members of the Adverse Action Class and Temporary Worker Sub-Class.

100.    Defendant violated the FCRA by failing to provide Plaintiffs and other class members with pre-adverse action notice, and a copy of the consumer report used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

101.    The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiffs and other Class members under 15 U.S.C. § 1681b(b)(3)(A)(i).  Defendant knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission.  Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

102.    Moreover, at the time Defendant failed to follow 15 U.S.C. § 1681b(b)(3)(A)(i) a plethora of FTC opinions and case law existed.

103.    Plaintiffs and the putative classes are entitled to statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

104.    Plaintiffs and the putative classes are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and the putative classes, pray for relief as follows:

a.      determining that this action may proceed as a class action;

b.      designating Plaintiffs as class representatives and designating Plaintiffs' Counsel as counsel for the putative classes;

c.      issuing proper notice to the putative classes at Defendant's expense;

d.      awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative classes; and

e.      awarding reasonable attorneys' fees and costs as provided by the FCRA.

## DEMAND FOR JURY TRIAL

Plaintiffs and the putative classes demand a trial by jury.

Dated this 5th day of October, 2021.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813.223.5505
Fax:  813-257-0572
Medelman@forthepeople.com

**CRAIG C. MARCHIANDO, ESQ.**
Fla. Bar No. 1010769
**LEONARD BENNETT, ESQ.**
*(pro hac vice)*
**CONSUMER LITIGATION**
**ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3660
Craig@clalegal.com
lenbennett@clalegal.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court and has been provided via electronic transmission and/or via U.S. Mail on this 5th day of October, 2021, to the following:

Daniel J. Butler, Esq.
Hunton Andrews Hurth LLP
333 SE 2nd Avenue, Suite 2400
Miami, Florida 33131
dbutler@huntonak.com
*Attorney for Defendant*

Robert T. Quackenboss, Esq.
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
rquackenboss@huntonak.com
*Attorney for Defendant*

*/s/ Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**